# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 19-1643V
UNPUBLISHED

| | |
|---|---|
| DENISE BRUEGGEMAN,<br><br>               Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>               Respondent. | Chief Special Master Corcoran<br><br>Filed: August 21, 2020<br><br>Special Processing Unit (SPU);<br>Findings of Fact; Statutory Six-Month<br>Requirement;  Influenza (Flu)<br>Vaccine; Shoulder Injury Related to<br>Vaccine Administration (SIRVA) |

*Bridget Candace McCullough*, Muller Brazil, LLP, Dresher, PA, for petitioner.

*Kimberly Shubert Davey*, U.S. Department of Justice, Washington, DC, for respondent.

## FINDINGS OF FACT[1]

On October 23, 2019, Denise Brueggeman filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges a Table claim - that she suffered a left shoulder injury related to vaccine administration ("SIRVA") after receiving the influenza ("flu") vaccine on September 28, 2018. Petition at 1, ¶¶ 2, 10. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] Because this unpublished fact ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the fact ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

A disputed fact issue has arisen regarding whether Petitioner's injury meets the Act's severity requirement. For the reasons discussed below, I find Petitioner suffered the residual effects of her injury for more than six months.

## I.     Relevant Procedural History

Along with her petition, Petitioner filed the affidavit and the medical records required by the Vaccine Act. Exhibits ("Exs.") 1-5, ECF No. 1; *see also* Section 11(c) (regarding the medical records required under the Vaccine Act). An initial status conference was scheduled for January 17, 2020.

During the call, the parties discussed the gap in medical treatment from Petitioner's last physical therapy session, held in late November 2018 (Ex. 3 at 18) until she was seen again, on April 3, 2019, for follow-up of her left shoulder pain and a recent injury to her right thumb (Ex. 2 at 6). *See* Order, issued Jan. 22, 2020, at 1, ECF No. 10. Petitioner indicated she was finalizing an affidavit to give additional information regarding this gap in treatment and her past and current condition. A deadline was set for a status report from Respondent. *Id.* at 2.

On March 23, 2020, Respondent filed a status report indicating that "it was not clear that the evidence submitted to date supports a finding that petitioner suffered the residual effects of her alleged injury for more than six months." ECF No. 12. A deadline was set for Petitioner to file any additional evidence regarding the statutory six-month requirement (such as the previously discussed affidavit from Petitioner), updated medical records, and a status report updating me on her demand. Scheduling Order, issued Mar. 26, 2020, at 1, ECF No. 13.

Petitioner filed her affidavit and status report stating that she had forwarded a demand and supporting documentation to Respondent on May 20, 2020. Ex. 6, ECF No. 16; Status Report, ECF No. 17. During email correspondence in late May 2020, Petitioner confirmed there were no outstanding updated medical records. *See* Informal Remark, dated May 27, 2020. Respondent was ordered to file his status report providing his tentative position regarding the merits of Petitioner's case. Non-pdf Scheduling Order, issued May 27, 2020.

By email correspondence, Respondent confirmed that he would not be able to provide his tentative position by the current deadline for his status report (August 25, 2020). *See* Informal Remark, dated Aug. 10, 2020. I have therefore determined it would be beneficial for me to issue a factual finding regarding the statutory six-month requirement, rather than further delay this case.

## II.     Relevant Authority

Pursuant to Section 13(a)(1)(A) of the Vaccine Act, a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, at *19.

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed, or varied, by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly

recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id.*

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

### III.   Finding of Fact

I make this finding after a complete review of the record to include all medical records, affidavits, and additional evidence filed, and in particular the following:

- Petitioner received the flu vaccine intramuscularly in her left deltoid on September 28, 2018 at the Little Clinic in Wichita, Kansas. Ex. 1 at 5, 15-18.

- On October 15, 2018 - seventeen days post-vaccination - Petitioner visited Dr. David Starkey at the Hutchison Clinic, complaining of left shoulder pain and soreness since receiving the flu vaccine. Ex. 2 at 13-14. Dr. Starkey diagnosed Petitioner with tendonitis and prescribed Prednisone and range of motion ("ROM") exercises. *Id.* at 13.

- On October 26 and 29, 2018, Petitioner called the Little Clinic complaining of arm pain since her September 28, 2018 flu shot. Ex. 1 at 7-8. During the October 29, 2018 call, Petitioner complained of more pain than usual, which she characterized as major for the first few days after vaccination. *Id.* at 7. She described the diagnosis and treatment prescribed by Dr. Starkey. While she indicated her pain had improved, she stated she was unable to lift her arm. She requested a copy of her vaccine record for wellness points from her insurance company. Petitioner was advised to continue her treatment with Dr. Starkey. *Id.*

- On November 2, 2018, Petitioner underwent an MRI which had been ordered by Dr. Starkey. Ex. 3 at 28. The MRI revealed probable impingement and tendinitis and showed "[e]vidence of a supraspinatus tear without retraction." *Id.* at 29.

- Dr. Starkey also prescribed physical therapy ("PT"). Ex. 3 at 22. At her first session, on November 8, 2018, Petitioner described left shoulder pain which occurred after she received a flu shot and had worsened lately. Reporting that she was taking Tylenol, Petitioner rated her pain at a level of 5 out of 10. She described difficulty "with pushing/pulling and pulling shirts overhead." *Id.* at 6. Some limitation in her ROM and strength was noted. *Id.* at 8.

- Based upon a referral from Dr. Starkey, Petitioner was seen by an orthopedist at the Hutchinson Clinic, Dr. Scott Goin, on November 14, 2018. Ex. 2 at 8-12. Rating her pain at a level of 4 out of 10, she described it as both sharp and dull pain which was aggravated when she lifted overhead. She reported that her pain began on September 28, 2018 when she received the flu shot. *Id.* at 8. Dr. Goin indicated the MRI showed no tears and observed full ROM and normal strength. *Id.* at 9-10. He offered to administer a cortisone injection which Petitioner declined. She opted instead to continue with her PT. *Id.* at 8. Dr. Goin prescribed additional PT. *Id.* at 11.

- Petitioner attended three more PT sessions, on November 13, 20, and 29, 2018. Ex. 3 at 10-21. At her last PT session, Petitioner reported that her "ROM [wa]s improving and pain ha[d] decreased" and that she was doing her exercises at home. *Id.* at 18. She explained that Dr. Goin believed she had bursitis and that her rotator cuff tear was minor. *Id.* at 18. While additional exercises had been added, it was noted that Petitioner tolerated her treatment well. Mild pain was noted with her strengthening exercises. This record shows that Petitioner asked to be discharged from PT to continue her home exercise program due to the improvement she had obtained and financial concerns. *Id.* at 20.

- Petitioner did not return for a follow-up appointment with Dr. Starkey until April 3, 2019 – four months since discharge from PT. Ex. 2 at 6-7. Although she also complained of right thumb pain after jamming her finger on a door, the primary purpose of the visit was her left shoulder pain. Petitioner reported that "[s]he ha[d] seen improvement in ROM and pain [but] still ha[d] weakness and stiffness with abduction." *Id.* at 6. Dr. Starkey observed that Petitioner had "limited [a]bduction." *Id.* at 7.

- In her supplemental affidavit, Petitioner indicated that, after requesting a discharge from formal PT, she continued to perform the same exercises three times a week until May 2019. Ex. 6 at ¶¶ 2-5. While acknowledging that her pain is no longer as severe, and that she can now sleep through

the night, Petitioner maintains that she continues to suffer some residual effects of her injury. *Id.* at ¶¶ 6-9.

- The medical records show that Petitioner, a teacher, had expended at least $2,645.00 in medical expenses. Ex. 3 at 6, 27.

The above medical entries clearly establish that on April 9, 2019, more than six months after vaccination, Petitioner still had weakness and stiffness with abduction. On this date, Dr. Stuckey observed that Petitioner showed limited abduction. In addition, although Petitioner did not attend PT or receive medical treatment of her left shoulder injury from November 29, 2018 until April 3, 2019, the treatment cessation has a reasonable explanation, and does not suggest the SIRVA injury had dissipated. In this period of time, Petitioner's shoulder injury was not as acute, and she was making progress performing the same exercises at home. Additionally, the medical records show she was concerned about the financial burden of paying for her PT.

Compared to other SIRVA injuries, Petitioner's left shoulder pain and limited ROM was not severe. However, the mildness of Petitioner's symptoms is a matter that goes to the ultimate quantum of damages to be paid. The fact that her injury was not especially acute does not undercut the determination that it nevertheless lingered for long enough to satisfy severity under The Act.

Accordingly, I find there is preponderant evidence to establish Petitioner suffered the residual effects of her injury for more than six months.

## IV.     Scheduling Order

**Respondent shall file a status report indicating how he intends to proceed in this case by no later than <u>Wednesday, October 21, 2020</u>. If unable to indicated how he intends to proceed, Respondent's counsel shall provide additional information regarding the amount of additional time needed and whether there are other issues which could be addressed, such as additional factual issues or other documentation needed to support Petitioner's demand conveyed on May 20, 2020.**

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master